```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| CAROYLN DIVIACCHI,<br><br>              Plaintiff,<br><br>       v.<br><br>SPEEDWAY LLC d/b/a HESS RETAIL<br>STORES LLC,<br><br>              Defendant. | CIVIL ACTION<br>NO. 15-10655-WGY |

<u>FINDINGS OF FACT AND RULINGS OF LAW</u>

YOUNG, D.J.                                                  June 12, 2015

**I.   INTRODUCTION**

     The plaintiff Carolyn Diviacchi ("Diviacchi") brings this action against Speedway LLC d/b/a Hess Retail Stores LLC ("Hess")[1] seeking injunctive relief arising out of Hess's collection of her zip code while processing credit card transactions, which she views as a violation of Massachusetts' consumer privacy laws.  After holding a two-day bench trial, the Court now makes the following findings of fact and rulings of law.

---

     [1] Diviacchi originally sued Hess Corporation d/b/a Hess Retail Operations LLC, Hess Retail Stores LLC, Hess Realty LLC, and Hess Retail Holdings LLC, <u>see</u> Compl./Jury Demand, ECF No. 1, but all counts against Hess Corporation were dismissed prior to the present stage of the litigation, <u>see</u> Stip. Dismissal Count II Only Hess Corp. Only, ECF No. 42; Tr. Vol. II 4:7-24, ECF No. 48.

[1]

This case began on March 4, 2015, when Diviacchi filed a two-count complaint. Compl./Jury Demand ("Compl."), ECF No. 1. Count I raised a claim for damages under Massachusetts General laws chapter 93A sections 2 and 9 ("Chapter 93A"), id. ¶¶ 26-28, while Count II raised a claim for equitable injunctive relief in the event that no monetary damages were available, id. ¶¶ 29-30. Diviacchi filed the complaint as a putative class action with herself as class representative. See id. ¶¶ 22-25.

Diviacchi moved for a preliminary injunction on March 15, 2015. Pl.'s Mot. Prelim. Inj., ECF No. 5. Two weeks later, Hess filed a motion to dismiss. Defs.' Mot. Dismiss, ECF No. 14. The Court heard oral argument on both motions on April 2, 2015. Elec. Clerk's Notes, ECF No. 27. At the hearing, the Court denied Hess's motion to dismiss. Id. Turning to Diviacchi's motion for a preliminary injunction, the Court – following its usual practice - collapsed that motion with trial on the merits pursuant to Federal Rule of Civil Procedure 65(b) and set the matter for trial starting April 6. Id. Originally, that trial was to be an exemplar trial dealing only with Diviacchi's individual claims; no class-wide issues would be decided. Id.

The day after the hearing, Diviacchi filed a notice dismissing Count I of the complaint. Pl.'s Notice Dismissal Count I Only, ECF No. 31. Diviacchi's counsel represented that

this meant that the class claim was thus out of the case entirely. Tr. Vol. I 7:12-20, ECF No. 45. In the wake of the dismissal of Count I, the Court held a two-day bench trial on April 6 and 7, 2015 addressing Diviacchi's individual claim for injunctive relief under Count II. See id.; Tr. Vol. II, ECF No. 48. At the end of the second day of trial, the Court took the matter under advisement. Tr. Vol. II 34:25-35:1.

## II. FINDINGS OF FACT

The Court makes its findings of fact based on the four exhibits received in evidence during the bench trial, a list of stipulations with attached affidavits, and the testimony of Diviacchi herself. Tr. Vol. II 5:11-15.

Diviacchi has been a resident of the Allston neighborhood of Boston for approximately twenty-five years. Tr. Vol. I 26:13-14, 28:2-3. For the entire duration of her residence in Allston, Diviacchi has filled her car with gasoline at a Hess-branded gas station on Cambridge Street. Id. at 26:15-18, 27:4-7, 28:4-8. When purchasing gasoline, Diviacchi almost always uses her credit card rather than cash. See id. at 37:15-40:9. At trial, she described the purchasing process as follows:

> [Y]ou find an empty pump, . . . you put your card into the . . . pump with the gas, you put your card in, run your card through, and wait, and then the . . . terminal window asks for your zip code and you put your zip code in and then it accepts your card and you can proceed to pump the gas.

Id. at 27:11-16. She further testified that she does not know what happens to the zip code after it is entered at the pump. Id. at 40:10-12. Diviacchi's counsel admitted during argument before the Court that she makes no allegation that Hess sent marketing materials to her home at any point. Id. at 11:20-25.

The affidavits provided by Hess shed light both on what happens to the zip code information after it is entered and why Hess requires that customers enter their zip code to use their credit cards at the pump. The zip code is collected as part of the Address Verification System ("AVS") used by First Data Corporation ("First Data"), Hess's credit card transaction processing vendor. Stipulations, Ex. B, Aff. Paul Smith ("Smith Aff.") ¶ 3, ECF No. 43-2. When a customer inputs her zip code, that information (along with the credit card number and other data) are held in the volatile memory of the gas station's fuel pump, fuel controller, and a so-called credit appliance. Stipulations, Ex. A, Aff. Akira Johnson ("Johnson Aff.") ¶¶ 4-5, ECF No. 43-1. From the volatile memory, the data is sent to First Data; First Data in turn transmits the data to the card issuer (such as Visa or Mastercard), which compares the provided zip code with the billing address on record and then sends a single-letter code to First Data and Hess indicating whether the zip codes match – and thus whether the transaction is authorized. Id. ¶ 8. Once a transaction is authorized, Hess's

credit appliance records the account number, the cardholder name, and the card expiration date and retains that information for six days. Id. ¶ 5. The zip code, however, is only ever held in the credit appliance's volatile memory and is not recorded or retained at any time. Id. ¶¶ 5, 8; Smith Aff. ¶¶ 4, 7. Because the zip code is not recorded, Hess does not have the ability to access its customers' zip code data. Johnson Aff. ¶ 9. As would reasonably follow, Hess thus does not use the zip codes for marketing purposes, nor does it sell zip code information to any third parties. Id. ¶¶ 10-11; Smith Aff. ¶¶ 9-10.

Hess attests that it uses the AVS solely for purposes of fraud prevention. Johnson Aff. ¶ 7; Smith Aff. ¶ 4. Because the pay-at-the-pump system is not supervised by Hess employees and because the customer is not required to sign a sales draft, these kinds of purchases are four times more vulnerable to fraud than standard credit card transactions that take place in the presence of a clerk or customer service representative. Stipulations, Ex. C, Aff. Stephanie J. Brown ("Brown Aff.") ¶ 4, ECF No. 43-3. When such fraud takes place, Hess is required to pay the cost of the transaction. Id. ¶ 5. Around 2005 or 2006, some Hess-branded gas stations in New York City lost $20,000 to $30,000 each month as a result of fraud. Smith Aff. ¶ 3. The use of AVS has decreased the incidence of fraud between seventy

and eighty percent in New York and up to sixty percent in Massachusetts and other states. Id. ¶ 5; Brown Aff. ¶ 9. While credit card issuers like Visa, Mastercard, and Discover do not affirmatively require the entry of a customer's zip code during a pay-at-the-pump transaction, Stipulations ¶ 1, ECF No. 43, the use of AVS (including entry of the zip code) is considered to be a "best practice" and is recommended by the credit card issuers, see Brown Aff. ¶¶ 10-11.

**III. RULINGS OF LAW**

    **A.    Availability of Injunctive Relief**

As a preliminary matter, the parties contest whether injunctive relief is available under the relevant statutory framework given that – because she has not received any marketing materials from Hess, see Tr. Vol. I 11:20-11:25 – Diviacchi has not suffered any concrete injury under the law. The dispute arises from the wording of the relevant statutory framework and the shifting interpretations given to that framework over time by the Massachusetts Supreme Judicial Court ("SJC").

The substantive core of Diviacchi's claim is Massachusetts General Laws chapter 93 section 105 ("Section 105"), which states in relevant part that:

> (a) No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written

[6]

>    or require that a credit card holder write personal
>    identification information, not required by the credit
>    card issuer, on the credit card transaction form.
>    Personal identification information shall include, but
>    shall not be limited to, a credit card holder's
>    address or telephone number.
>
>    . . .
>
>    (d) Any violation of the provisions of this chapter
>    shall be deemed to be an unfair and deceptive trade
>    practice, as defined in section 2 of chapter 93A.

Mass. Gen. Laws ch. 93, § 105. Whereas Section 105 lays out the substantive contours of Diviacchi's claim, section 9 of Chapter 93A grants her the actual cause of action:

>    Any person . . . who has been injured by another
>    person's use or employment of any method, act or
>    practice declared to be unlawful by section two or any
>    rule or regulation issued thereunder . . . may bring
>    an action in the superior court . . . for damages and
>    such equitable relief, including an injunction, as the
>    court deems to be necessary and proper.

Mass. Gen. Laws ch. 93A, § 9.

The parties' argument over the availability of injunctive relief absent injury arises from the tension between two key SJC opinions interpreting these two statutes. In the first, Leardi v. Brown, the SJC faced a case centered on tenants' claims arising out of impermissible language their landlord had inserted into their leases, despite the fact that the tenants were never aware of nor were subjected to enforcement of the illegal provisions. 394 Mass. 151, 152 (1985). The SJC held that:

[7]

> [U]nder circumstances where there has been an invasion
> of a legally protected interest, but no harm for which
> actual damages can be awarded, . . . [Chapter 93A]
> provides for the recovery of minimum damages in the
> amount of $25. . . . [I]n amending [Chapter 93A], the
> Legislature exercised its prerogative to create a
> legal right, the invasion of which, without more,
> constitutes an injury.

Id. at 160.

The second key case, Tyler v. Michaels Stores, Inc., 464 Mass. 492 (2013), examined the scope and purpose of Section 105 as well as the relationship between that statute, Chapter 93A, and Leardi. As a threshold matter, the SJC in Tyler held that a credit card user's zip code qualifies as "personal identification information" as contemplated by Section 105, relying on the idea that Section 105 is designed to protect consumer privacy rather than to prevent identity fraud. Id. at 499-501. More important to the present dispute, however, was the SJC's treatment of Leardi. After calling the above-cited language "a source of some confusion in the years since 1985," the SJC stated that:

> Later decisions of this court have interpreted the
> Leardi case and the [above-cited language] in
> different ways. Nevertheless, our recent decisions
> generally establish the following. The invasion of a
> consumer's legal right (a right, for example,
> established by statute or regulation), without more,
> may be a violation of [Chapter 93A, section 2] and
> even a per se violation of § 2, but the fact that
> there is such a violation does not necessarily mean
> the consumer has suffered an injury or a loss
> entitling her to at least nominal damages and
> attorney's fees; instead, the violation of the legal

[8]

> right that has created the unfair or deceptive act or
> practice must cause the consumer some kind of
> separate, identifiable harm arising from the violation
> itself. To the extent that the quoted passage from
> Leardi can be read to signify that the "invasion" of a
> consumer plaintiff's established legal right in a
> manner that qualifies as an unfair or deceptive act
> under [Chapter 93A, section 2] automatically entitles
> the plaintiff to at least nominal damages (and
> attorney's fees), we do not follow the Leardi
> decision. Rather, as [several other post-Leardi]
> decisions indicate, a plaintiff bringing an action for
> damages under [Chapter 93A, section 9] must allege and
> ultimately prove that she has, as a result, suffered a
> distinct injury or harm that arises from the claimed
> unfair or deceptive act itself.

Id. at 502-03 (internal footnotes and citations omitted). The SJC went on to identify two injuries that might arise from a violation of Section 105: the unwanted receipt of marketing materials and the sale of a consumer's private information to a third party. Id. at 503-04.

It is undisputed that Diviacchi suffered neither of the injuries contemplated by the SJC in Tyler and that she now seeks only injunctive relief through Count II of her complaint. The crux of the dispute, then, is whether the language from Tyler above forecloses the possibility of injunctive relief in the absence of any injury beyond the mere invasion of a legal right. Diviacchi argues that Tyler only overruled Leardi's statement equating the invasion of a legal right to an actual injury insofar as it applied to monetary damages; accordingly, Leardi is still good law to the extent a plaintiff only seeks an

[9]

injunction or other equitable relief.  Tr. Vol. I 12:5-21, 15:16-16:8.[2]

Hess offers several arguments for why a plaintiff must have a concrete injury to obtain an injunction.  First, Hess points to the text of Chapter 93A itself, which states that "[a]ny person . . . who has been injured by another person's use . . . of any method, act or practice declared to be unlawful by section two . . . may bring an action . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."  See Tr. Vol. II 32:4-9; Mass. Gen. Laws ch. 93A, § 9(1).  Section 105 simply states that violations

---

[2] Diviacchi also alleges that no injury is required if a plaintiff is acting as a private attorney general.  Tr. Vol. II 14:8-9, 16:11-18:10 (citing LeClair v. Norwell, 430 Mass. 328 (1999)).  The Court, however, rejects the premise that Diviacchi is serving as a private attorney general.  In Carroll v. Marzilli, the Massachusetts Appeals Court confronted a case where the plaintiffs, who had filed suit under the Massachusetts Civil Rights Act ("MCRA"), contended that they should be treated as private attorneys general.  75 Mass. App. Ct. 550, 553-55 (2009).  In ruling against the plaintiffs, the Appeals Court relied on the fact that the MCRA has separate sections providing for suits by the Attorney General and by private parties, thus "strik[ing] a careful balance between public and private causes of action."  Id. at 554.  The same logic applies to Chapter 93A.  Diviacchi filed her suit under Chapter 93A, section 9, which expressly provides a cause of action to private parties.  Mass. Gen. Laws ch. 93A, § 9; see also Tyler, 464 Mass. at 501 (stating that this is the source of any claims stemming from violations of Section 105).  Similar to the MCRA, Chapter 93A has a separate section providing a cause of action to the Attorney General of the Commonwealth.  See Mass. Gen. Laws ch. 93A, § 4.  Given this distinction, the Court declines to apply rules regarding private attorneys general to Diviacchi's claim.

of its consumer privacy provisions are deemed to be unlawful trade practices under section 2 of Chapter 93A. See Mass. Gen. Laws ch. 93, § 105. Hess suggests that the fact that Chapter 93A grants a cause of action to someone injured by such practices suggests that the mere legal injury alleged here is not enough.

Hess bolsters this reading by pointing to two post-Tyler SJC opinions that portray Tyler as requiring an injury distinct from the unlawful trade practice without reference to Tyler's restriction of this holding to cases involving damages. See Tr. Vol. II 30:25-31:13 (citing Bellermann v. Fitchburg Gas & Elec. Light Co., 470 Mass. 43, 53-54 (2014) (citing Tyler for the proposition that "the injury must be a 'separate, identifiable harm' that is 'distinct' from the unfair or deceptive conduct itself" without citing Tyler's language about monetary damages); Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 823 & n.12 (2014) (stating that Tyler requires "only that a plaintiff establish an invasion of a legally protected interest, in the form of 'a distinct injury or harm that arises from the claimed unfair or deceptive act itself,'" and further stating that recompense for this injury will be statutory damages of twenty-five dollars "in the absence of actual damages")). Hess further points to a First Circuit case (itself predating Tyler by a few years) in which that court dealt with the Chapter 93A

[11]

damages claim of a woman who had bought a heartworm drug for her dog and alleged that the manufacturer had not disclosed certain risks, although she admitted that her dog was unharmed and that she had suffered no economic injury. Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 251-52 (2010). After analyzing the path of the SJC's jurisprudence from Leardi onwards, the First Circuit held that "the most recent SJC cases in point appear to have returned to the notion that injury under chapter 93A means economic injury in the traditional sense; and, if cases like Leardi survive as exceptions, it is for the SJC to identify and define them." Id. at 255.[3]

---

[3] In addition to its arguments against the availability of an injunction, Hess further suggests that Diviacchi lacks standing to pursue one. Tr. Vol. II 32:9-33:5. Specifically, Hess points to Derby v. Jos. A. Bank Clothiers, Inc., No. 14-cv-12347, 2014 WL 7361023 (2014) (Saylor, J.), another case in this district involving the collection of zip codes. Noting that standing to seek an injunction requires the risk of a future injury, that court ruled that future receipt of unwanted marketing materials (or other conduct stemming from the defendant's past collection of the plaintiff's zip code) could support standing but that future collection of the zip code would not qualify as an injury able to support standing, as the "plaintiff can simply avoid shopping at [the] defendant's stores, or avoid using his credit card to make any purchases he does make at its stores." Id. at *8. Because Diviacchi seeks equitable relief regarding only this latter sort of conduct, Hess says, she lacks standing to seek an injunction.
This Court is satisfied that Diviacchi has standing to seek an injunction. As the Derby court points out, Diviacchi could buy her gas elsewhere or pay with cash. But neither of those alternative courses of action should bar standing here. Looking first at the argument that Diviacchi need not patronize the defendant's gas stations, the Court notes (1) that she has been using the same gas station for twenty-five years and can

Both sides present compelling arguments.  Hess is certainly correct that Tyler and the precedent on which it relies evince a broad shift away from the notion that invasion of a legal right, standing alone, is sufficient to support a claim under Chapter 93A.  Reinforcing this trend, the two SJC cases Hess cites that postdate Tyler both portray that case's holding in a broad light, though admittedly neither of those two cases squarely addressed the question of whether an injury is required for purely equitable relief.  Moreover, as Hess claims, the section of Chapter 93A that grants Diviacchi her cause of action does seem to draw a line between injury on the one hand and a forbidden trade practice on the other.

Despite its clear intention to move away from the holding in Leardi, however, Tyler takes great pain to stress that its holding has to do with claims for damages.  See Tyler, 464 Mass.

---

reasonably be expected to do so in the future, and (2) that, because AVS is considered to be a "best practice" industry-wide, virtually any gas station she would use would likely require her to input her zip code just as Hess does.  Turning to the argument that Diviacchi could avoid future collection of her zip code by paying with cash, the Court notes that Diviacchi has expressed a preference for using a credit card because of the high cost of gas and the increased ease of recordkeeping.  Tr. Vol. I 37:21-38:3.  A system that denies Diviacchi standing because she could use cash ignores the harms (minor though they may be) that using cash would create.  Moreover, because Section 105 functionally serves to facilitate credit card use by increasing cardholders' privacy, it strikes the Court as odd to deny a plaintiff standing to vindicate these rights just because she could use cash instead.

at 503 ("[T]he fact that there is such a violation [of Chapter 93A, section 2] does not necessarily mean the consumer has suffered an injury or a loss entitling her to at least nominal damages and attorney's fees . . . [A] plaintiff bringing an action for damages . . . must allege and ultimately prove that she has, as a result, suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself."). Most critical is the line of Tyler that describes its relationship to Leardi:

> To the extent that the quoted passage from Leardi [i.e., the passage discussing "a legal right, the invasion of which, without more, constitutes an injury"] can be read to signify that 'invasion' of a consumer plaintiff's established legal right in a manner that qualifies as an unfair or deceptive act . . . automatically entitles the plaintiff to <u>at least nominal damages</u> (and attorney's fees), we do not follow the Leardi decision.

Id. (emphasis added). The Court has faith that the SJC chose its words carefully – and the choice explicitly and repeatedly to address the role of damages seems to suggest that Leardi's core holding was only overruled to the extent that parties sought damages for invasion of a purely legal right. This Court views the SJC's silence on equitable relief – particularly in contrast to its highlighting of the issue of damages at least three times – as implying that Leardi's holding remains alive as it pertains to injunctions, even viewed against the trend away from granting causes of action to address purely legal injuries.

[14]

Accordingly, based on this record and in the absence of further guidance from the SJC, the Court rules that a plaintiff may pursue a claim for purely injunctive relief under Section 105 absent any injury distinct from the collection of cardholder identification information in and of itself.

    **B.    Scope of Section 105**

While the Court is satisfied that a plaintiff may seek an injunction for a violation of Section 105 absent some other injury, that is not enough for Diviacchi to prevail here, as Hess further argues that this case does not fall within the scope of Section 105 at all. By its terms, Section 105 forbids entities like Hess from "writ[ing] . . . personal identification information, not required by the credit card issuer, on the credit card transaction form." Mass. Gen. Laws ch. 93, § 105(a). In his closing argument, Hess's counsel noted that a customer's zip code – the "personal identification information" contemplated by Section 105 – only ever exists in volatile memory, while the "credit card transaction form" consists of the account number, cardholder name, and card expiration date that are written to the gas station's credit appliance. Tr. Vol. II 22:9-23:6 (citing Johnson Aff. ¶ 5). He further stated that once the credit card issuer has sent its single-letter code authorizing the transaction, "the zip code disappears forever, irretrievably. Hess never had it, but in this information

[15]

transmission, the zip code drops out forever." Id. 24:18-22. Because the zip code is never actually recorded on the credit card transaction form, Hess says, it does not fall within the scope of Section 105's prohibitions.

Hess bolsters this argument that its use of zip codes for fraud prevention falls outside the ambit of Section 105 by appealing to the original purpose of the statute. In Tyler, the SJC cited a memorandum prepared for Section 105's principal author indicating that "the purpose was to safeguard consumer privacy and more particularly to protect consumers using credit cards from becoming the recipients of unwanted commercial solicitations from merchants with access to their identifying information." Tyler, 464 Mass. at 498. Hess's counsel further pointed to a portion of the memorandum that he says suggests that merchants would be justified in requiring the entry of zip codes for fraud protection purposes when credit card issuers would otherwise not cover the cost of fraudulent transactions. Tr. Vol. II 28:9-21.

The Court finds this argument persuasive. It is uncontroverted in the record that a customer's zip code is only held in volatile memory and is never recorded or written in any accessible form, as is required by the explicit terms of Section 105. While it is by no means dispositive, the legislative history cited by the SJC in Tyler underscores the notion that it

is only the recording of and future access to personal identification information that Section 105 is intended to combat.

Diviacchi's counsel attempted to rebut this by arguing that the transmission of the zip code between First Data and the credit card issuer could be intercepted, recorded, and used for forbidden purposes, <u>see</u> Tr. Vol. II 9:16-10:10, but there is nothing in the record that elevates this argument above bare conjecture. This Court must make its decision based on evidence, and all the evidence in the record that speaks to the manner in which a customer's zip code is used – specifically, the three affidavits that the parties stipulated ought be admitted – points toward the conclusion that the zip code is never recorded on the credit card transaction form. Accordingly, Hess's practice falls outside the scope of Section 105 (as determined by that statute's explicit language) – and thus there is no statutory violation capable of supporting Diviacchi's Chapter 93A claim.

## IV. CONCLUSION

For the foregoing reasons, the Court rules in favor of Hess and denies Diviacchi's request for an injunction barring Hess from requiring her to enter her zip code when paying for gas with her credit card.

**SO ORDERED.**

　　　　　　　　　　　　　　　　_/s/ William G. Young_
　　　　　　　　　　　　　　　　WILLIAM G. YOUNG
　　　　　　　　　　　　　　　　DISTRICT JUDGE